IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA


JACQUELINE MOORE, individually and
as Administrator of the Estate of
KEITH KARWACKI, deceased,

      Plaintiff,

v.                              Civil Action No. 5:05CV169
                                        (STAMP)
LIFE INSURANCE COMPANY OF NORTH AMERICA,
a foreign corporation,
CIGNA CORPORATION d/b/a CIGNA GROUP INSURANCE,
a foreign corporation and
METROPOLITAN LIFE INSURANCE COMPANY,
a foreign corporation,

      Defendants,

and

METROPOLITAN LIFE INSURANCE COMPANY,
a foreign corporation,

      Counter Claimant,

v.

JACQUELINE MOORE, individually and
as Administrator of the Estate of
KEITH KARWACKI, deceased,

      Counter Defendant,

and

SHARON L. KARWACKI,
and DEBORAH NAUGHTON,

      Third Party Defendants.


## <u>MEMORANDUM OPINION AND ORDER</u>
<u>GRANTING DEFENDANTS LIFE INSURANCE COMPANY OF NORTH AMERICA</u>
<u>AND CIGNA CORPORATION'S MOTION TO DISMISS</u>
<u>GRANTING DEFENDANT LIFE INSURANCE COMPANY OF NORTH AMERICA'S</u>
<u>MOTION FOR SUMMARY JUDGEMENT;</u>

**GRANTING DEFENDANT CIGNA CORPORATION'S
MOTION FOR SUMMARY JUDGMENT;
DENYING DEFENDANTS LIFE INSURANCE COMPANY OF NORTH AMERICA
AND CIGNA CORPORATION'S REQUEST FOR ATTORNEYS' FEES AND COSTS;
GRANTING DEFENDANT LIFE INSURANCE COMPANY OF NORTH AMERICA'S
MOTION FOR LEAVE TO FILE MEMORANDUM OPPOSING PLAINTIFF'S
REQUEST TO STRIKE THE DECLARATION OF DEBORAH JAMESON;
AND DIRECTING THE CLERK TO FILE DEFENDANT
LIFE INSURANCE COMPANY OF NORTH AMERICA'S
MEMORANDUM OPPOSING PLAINTIFF'S REQUEST TO
STRIKE THE DECLARATION OF DEBORAH JAMESON**

## I.  Procedural History

Jacqueline Moore, the plaintiff in this civil action, individually and as Administrator of the Estate of Keith Karwacki, filed a complaint in the Circuit Court of Marshall County, West Virginia against the defendants, Life Insurance Company of North America ("LINA"), CIGNA Corporation d/b/a CIGNA Group Insurance ("CIGNA") and Metropolitan Life Insurance Company ("Met Life") after exhausting her administrative appeals.  While this action was in state court, the plaintiff filed an amended complaint seeking declaratory judgment and alleging breach of contract, breach of common law duty of good faith and fair dealing, breach of fiduciary duty and, in the alternative, a count for violations of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 and § 502(a)(1)(B) ("ERISA").

Thereafter, the defendants filed a notice of removal.  Met Life filed a counterclaim and third party complaint for interpleader.  This Court granted Met Life's request for interpleader and, at that time, Deborah Naughton and Sharon L.

Karwacki became third party defendants in this action because of their claim to any award of benefits from the policy. This Court then entered a memorandum opinion and order granting LINA/CIGNA's motion to dismiss Counts I, II and III, the state law claims, and granting in part and denying in part Met Life's motion to dismiss. Specifically, this Court granted Met Life's motion to dismiss Counts IV, V and VI and denied without prejudice Met Life's motion to dismiss Count VII. Further, this Court granted Met Life's motion to strike the plaintiff's jury demand. The plaintiff then voluntarily agreed to dismiss Met Life from this action. After this Court issued that order, the plaintiff filed a motion pursuant to Rule 54(e) to alter or amend this Court's order regarding ERISA preemption, or, in the alternative, for certification of the order as a final judgment. The plaintiff argued that this Court lacked sufficient evidence to make a determination on the issue of ERISA preemption and attached a copy of the LINA/CIGNA policy. This Court rejected the plaintiff's contention and denied the motion.

LINA, CIGNA, and the plaintiff then filed summary judgment motions. In addition to the briefing by LINA, CIGNA, and the plaintiff, third party defendant Naughton filed a response in support of the plaintiff's motion for summary judgment and third party defendant Karwacki filed a response in opposition to LINA and CIGNA's motions for summary judgment. LINA and CIGNA replied to these responses. This Court granted LINA and CIGNA's motions for

summary judgment on the plaintiff's alternative claim alleging an ERISA violation and denied the plaintiff's motion for summary judgment. On appeal, the United States Court of Appeals for the Fourth Circuit found that the grant of dismissal was premature because information about the LINA/CIGNA policy at issue was needed. The Fourth Circuit reversed the grant of dismissal and remanded for further proceedings on the issue of ERISA preemption in light of the information and evidence submitted by the plaintiff in her Rule 54(e) motion, including a determination by this Court of whether the "safe harbor" regulatory exception to ERISA preemption under 29 C.F.R. § 2510.3-1(j) applies to the policy. The Fourth Circuit also vacated the grant of summary judgment in favor of defendants LINA/CIGNA as to the alternative ERISA count. The Fourth Circuit stated that if this Court, on remand, should determine that the accidental death and dismemberment policy is subject to ERISA and dismiss the state law claims anew on that basis, this Court is free to reconsider the motion for summary judgment as to the ERISA count at that time. This Court ordered the parties to brief the issue as to whether this action is subject to ERISA or excluded under the safe harbor exception.

## II. <u>Facts</u>

The plaintiff is the mother of Keith Karwacki ("Karwacki" or "decedent") and the administrator of his estate. On February 28, 2003, Karwacki died in a motorcycle accident in Hollywood, Florida.

Karwacki had a blood alcohol content of 0.16 at the time of the accident.

At the time of his death, American Airlines, Inc. employed Karwacki. Through his employment with American Airlines, Karwacki was insured under two separate insurance policies, a group accidental death and dismemberment ("AD&D") policy issued by LINA/CIGNA, Policy No. OK 80 99 74, and a group life insurance policy issued by Met Life, Policy No. 29900-G. LINA/CIGNA's policy provides benefits for loss from bodily injury to eligible employee participants. The plaintiff asserts that the benefits under the group AD&D policy were issued by LINA/CIGNA and any claims under the policy were administered by LINA/CIGNA. CIGNA asserts that it did not process or administer any of the plaintiff's claims.

Following Karwacki's death, the plaintiff timely submitted claims for accidental death benefits and life insurance benefits as a beneficiary under these policies. LINA denied the plaintiff coverage on the AD&D policy on the grounds that Karwacki's death was the result of a "self-inflicted injury." LINA also denied the plaintiff's administrative appeal and refused to provide coverage under Policy No. OK 80 99 74. The plaintiff exhausted the internal appeal process regarding LINA/CIGNA's policy before bringing this civil action.

In her amended complaint, which alleges violations of state law and, in the alternative, violation of ERISA, the plaintiff

seeks a declaratory judgment that LINA/CIGNA are legally obligated to pay $500,000.00 to the plaintiff under the terms of Policy No. OK 80 99 74, a declaratory judgment that defendant Met Life is legally obligated to pay the remaining policy proceeds of $47,400.00 to the plaintiff under the terms of Policy No. 29900-G, compensatory damages, pre-judgment and post-judgment interest, costs and attorney's fees and punitive damages.[1]

III. <u>Applicable Law</u>

A.  <u>ERISA Preemption</u>

ERISA preempts all state law claims that "relate to any employee benefit plan." 29 U.S.C. § 1144(a). Two criteria must be met for a plaintiff's state law claims to be preempted by ERISA: (1) an "employee benefit plan" must exist; and (2) the plaintiff must have standing to sue as a "participant" or "beneficiary" of the employee benefit plan. <u>Madonia v. Blue Cross & Blue Shield of Va.</u>, 11 F.3d 444, 446 (4th Cir. 1993). The Department of Labor issued a regulation exempting certain benefit plans from ERISA. <u>Custer v. Pan Am. Life Ins. Co.</u>, 12 F.3d 410, 417 (4th Cir. 1993). This "safe harbor" exception exempts from ERISA "those arrangements in which employer involvement is completely absent." <u>Vazquez v. The Paul Revere Life Ins. Co.</u>, 289 F. Supp. 2d 727, 731 (E.D. Va. 2001); 29 C.F.R. § 2510.3-1(j).

---

[1]Met Life paid the plaintiff half its coverage, impleaded the Third Party Defendants in this action, interpled its remaining coverage, and was dismissed.

B.   <u>Summary Judgment</u>

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  The party seeking summary judgment bears the initial burden of showing the absence of any genuine issues of material fact.  <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986).  "The burden then shifts to the nonmoving party to come forward with facts sufficient to create a triable issue of fact." <u>Temkin v. Frederick County Comm'rs</u>, 945 F.2d 716, 718 (4th Cir. 1991), <u>cert. denied</u>, 502 U.S. 1095 (1992)(citing <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986)).  However, as the United States Supreme Court noted in <u>Anderson</u>, "Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial."  <u>Id.</u> at 256.  "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  <u>Id.</u> at 250; <u>see also</u> <u>Charbonnages de France v.</u>

Smith, 597 F.2d 406, 414 (4th Cir. 1979)(Summary judgment "should be granted only in those cases where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law." (citing Stevens v. Howard D. Johnson Co., 181 F.2d 390, 394 (4th Cir. 1950))).

In Celotex, the Court stated that "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Summary judgment is not appropriate until after the non-moving party has had sufficient opportunity for discovery. See Oksanen v. Page Mem'l Hosp., 912 F.2d 73, 78 (4th Cir. 1990), cert. denied, 502 U.S. 1074 (1992). In reviewing the supported underlying facts, all inferences must be viewed in the light most favorable to the party opposing the motion. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## IV.  Discussion

A.  Applicability of ERISA and the Safe Harbor Exception to the LINA/CIGNA Policy

This Court begins its analysis of whether an employee benefit plan exits by looking to the language of the statute. LINA, as a party seeking to use ERISA preemption as an affirmative defense to

the plaintiff's state law claims, has the burden to prove the facts necessary to establish ERISA preemption. <u>Great-West Life & Annuity Ins. Co. v. Information Systems & Networks Corp.</u>, 523 F.3d 266, 270 (4th Cir. 2008). The statute defines "employee benefit plan" as either an "employee pension benefit plan" or an employee welfare benefit plan." 29 U.S.C. § 1002(3). The statutory definition of "employee welfare benefit plan" includes five elements: "(1) a plan, fund, or program (2) established or maintained (3) by an employer, employee organization, or both (4) for the purpose of providing a benefit (5) to employees or their beneficiaries." <u>Custer</u>, 12 F.3d at 417 (citing <u>Donovan v. Dillingham</u>, 688 F.2d 1367, 1371 (11th Cir. 1982) (en banc)).

The last three elements listed above are easily met in this case. As to the third element of the definition, American Airlines is an employer. Further, the benefits offered to the American Airlines employees are the type of benefits described in ERISA, in this case, accident and death. Finally, the decedent was a participant because he was an employee of American Airlines who was eligible to receive the AD&D coverage which covered employees of American Airlines. 29 U.S.C. § 1002(7).

As to the first element, the evidence in this case shows that American Airlines "established a plan to help its employees obtain health insurance." <u>Madonia</u>, 11 F.3d at 446. The plan at issue in this civil action meets all five prongs of the <u>Donovan</u> test and

9

constitutes an ERISA welfare benefit plan. An ERISA plan exists "if from the surrounding circumstances a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits." Id. (quoting Donovan, 688 F.2d at 1373). In this case, the intended benefit is the AD&D coverage. The beneficiaries are the eligible American Airlines employees. The source of financing is American Airlines and its employees. The procedure for receiving benefits is stated in the language of the plan. Therefore, all the elements are met to establish the existence of a plan.

The remaining issue for this Court to decide is whether American Airlines "established or maintained" an employee benefit plan. It is the reality of a plan, not the mere decision to extend certain benefits, that is determinative of the establishment of a plan. Donovan, 688 F.2d at 1373. Events or acts "that record, exemplify or implement the decision will be direct or circumstantial evidence that the decision has become a reality -- e.g., financing or arranging to finance or fund the intended benefits, establishing a procedure for disbursing benefits, assuring employees that the plan or program exists . . ." The Department of Labor issued the "safe harbor" provision to help clarify "the meaning of the phrase 'established or maintained by the employer.'" Hall v. Standard Ins. Co., 381 F. Supp. 2d 526, 529 (W.D. Va. 2005). This regulation provides:

> The terms "employee welfare benefit plan" and "welfare plan" shall not include a group or group type insurance program offered by an insurer to employees or members of an employee organization under which (1) No contributions are made by an employer or employee organization; (2) Participation [in] the program is completely voluntary for employees or members; (3) The sole functions of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer; and (4) The employer or employee organization receives no consideration in the form of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with payroll deductions or dues checkoffs.

29 C.F.R. § 2510.3-1(j). All four of these conditions must be present for a plan to qualify for the safe harbor regulation. Vazquez, 289 F. Supp. 2d at 731. The parties agree that two of these four requirements are met. The second requirement is met because participation in the program was voluntary. The fourth requirement is met because American Airlines received no consideration from LINA in connection with the policy.

While the plaintiff paid his own premiums for the AD&D coverage, he "benefitted from the unitary rate structure [American Airlines] was able to negotiate by bargaining" for the coverage. House v. Am. United Life Ins. Co., 499 F.3d 443, 449 (5th Cir. 2007). Thus, the employees "effectively received a premium discount or constructive contribution from [American Airlines]." Id.; Chatterton v. Cuna Mut. Ins. Society, 2007 WL 4207395, *4 (S.D. W. Va. Nov. 26, 2007). Further, American Airlines helped to

defray the cost of the AD&D coverage by maintaining control over the AD&D benefits, including the cost of those benefits to American Airlines' employees and by allowing the payment of employee premiums on a pre-tax basis. See Postma v. Paul Revere Life Ins. Co., 223 F.3d 533, 537 (7th Cir. 2000) ("When the employer helps defray the cost of the employee's insurance, it is even clearer that the plan falls outside of the safe harbor."); Chatterton, 2007 WL 4207395 at *4.

American Airline's negotiation of the policy with LINA, including bargaining the premium amounts, and facilitation of payment of employee premiums on a pre-tax basis amounted to a constructive contribution by American. The safe harbor provision is therefore unavailable.

Alternatively, LINA has met its burden of proof to establish that the third element of the safe harbor exception does not apply. An employer "can only assume a very limited role with respect to the plan if the third prong . . . is to be satisfied." Casselman v. Am. Family Life Assurance Co., 143 F. App'x 507, 509 (4th Cir. 2005). In order for an employer "to remain neutral for purposes of the safe harbor regulation, an employer must 'refrain from any function other than permitting the insurer to publicize the program and collect[] premiums.'" Hall, 381 F. Supp. 2d at 529 (quoting Butero v. Royal Maccabees Life Ins. Co., 174 F.3d 1207, 1213 (11th Cir. 1999)). The Department of Labor "has suggested that the

employees' viewpoint should constitute the principal frame of reference in determining whether endorsement occurred." Johnson v. Watts Regulator Co., 63 F.3d 1129, 1134 (1st Cir. 1995). The Johnson court held that:

> an employer will be said to have endorsed a program within the purview of the Secretary's safe harbor regulation if, in light of all the surrounding facts and circumstances, an objectively reasonable employee would conclude on the basis of the employer's actions that the employer had not merely facilitated the program's availability but had exercised control over it or made it appear to be part and parcel of the company's own benefit package.

Id.

Here, LINA has shown that American Airlines: (1) sponsored, established, and maintained a plan which provided various types of insurance coverage, including AD&D group coverage; (2) drafted and prepared master plan documents to implement the plan, which included documents that governed the plan and the options for benefits under the plan; (3) drafted and prepared master plan documents that expressly included within the plan the AD&D benefits sought by the plaintiff; (4) limited participation in the plan's AD&D benefits to certain employees of American Airlines by drafting the plan's AD&D eligibility requirements; (5) decided what type of benefits to make available to its employees under the plan; (6) decided to fund payment of the AD&D benefits and other benefits with group insurance policies; (7) determined to purchase a group policy from LINA to fund the payment of the AD&D benefits; (8)

negotiated the terms and purchase of the AD&D policy with LINA; (9) determined the type and levels of coverage that would be available to employees under the plan; and (10) provided participants with information regarding their rights under ERISA on page 146 of the Employee Benefits Guide.

In contrast to the employer in <u>Johnson</u>, American Airlines performed more than mere administrative tasks by drafting documents and distributing them to each plan participant, determining which classes of employees would be eligible for AD&D benefits, negotiating a unitary rate structure, allowing pre-tax payment of premiums, and including AD&D benefits among the benefits provided by the plan. <u>Hall</u>, 381 F. Supp. 2d at 530-31. LINA has shown that American Airlines' actions go beyond the mere decision to extend benefits to their employees and that American Airlines "established or maintained" an employee benefit plan.

Because the AD&D policy meets all the statutory elements of an ERISA plan, this Court finds that the policy is an ERISA plan and the safe harbor regulatory exception does not apply. Accordingly, the plaintiff's state law claims are preempted by ERISA and dismissed. This Court will review the plaintiff's alternative claim arising under federal law for the enforcement of benefits under ERISA.

B.  Summary Judgment Motions

The Fourth Circuit stated that if this Court determines that the AD&D policy is subject to ERISA on remand and dismisses the state law claims anew on that basis, this Court is free to reconsider the motion for summary judgment as to the ERISA count at that time. Accordingly, after reviewing the safe harbor provision and finding that it does not apply to the present case, this Court concludes that it must grant LINA and CIGNA's motions for summary judgment and deny the plaintiff's motion for summary judgment. In its motion for summary judgment, LINA argues that summary judgment is appropriate because Karwacki's death, which resulted from driving while intoxicated, was not accidental. In its motion for summary judgment, CIGNA argues that it had no role in the processing or administration of: (1) the plaintiff's claim for accidental death benefits; (2) the denial of the plaintiff's claim; or (3) the decision to uphold the denial following the plaintiff's administrative appeal.

1.  Standard of Review

This Court's first step in reviewing LINA's decision to deny the plaintiff benefits is to decide whether the plan's language grants LINA discretion to determine the plaintiff's eligibility for benefits. 29 U.S.C. § 1132(a)(1)(B); Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989); Quesinberry v. Life Ins. Co. of N. Am., 987 F.2d 1017, 1021 (4th Cir. 1993); Gower v. AIG Claim

<u>Services, Inc.</u>, 501 F. Supp. 2d 762, 768 (N.D. W. Va. 2007).  If the plan gives LINA the discretion to determine eligibility or to construe the terms of the plan, this Court will review LINA's decision to deny benefits for abuse of discretion.  <u>Firestone</u>, 489 U.S. at 115.  If LINA does not have the discretion to determine eligibility or to construe the terms of the plan, this Court will review LINA's decision to deny benefits <u>de novo</u>.  <u>Id.</u> at 109.  There are "no magic words required to trigger the application of one or another standard of judicial review . . . .  [I]t instead need only appear on the face of the plan documents that the fiduciary has been 'given [the] power to construe disputed or doubtful terms' -- or to resolve dispute over the benefits eligibility -- in which case 'the trustee's interpretation will not be disturbed if reasonable.'"  <u>Gower</u>, 501 F. Supp. 2d at 768 (quoting <u>de Nobel v. Vitro Corp.</u>, 885 F.2d 1180, 1187 (4th Cir. 1989)).  While the intention to grant discretionary authority must be clear, it may be granted by implication.  <u>Gallagher v. Reliance Standard Life Ins. Co.</u>, 305 F.3d 264, 268 (4th Cir. 2002).  Any ambiguity in the plan "is construed against the drafter of the plan, and it is construed in accordance with the reasonable expectations of the insured."  <u>Id.</u> at 269 (quoting <u>Bynum v. Cigna Healthcare, Inc.</u>, 287 F.3d 305, 313-14 (4th Cir. 2002)).

The plan provides:

PROOFS OF LOSS:  Written proof must be given to us within 90 days after the date of loss.  If that is not

> reasonably possible, we will not deny or reduce any claim if proof is furnished as soon as reasonably possible.
>
> TIME OF PAYMENT OF CLAIMS: Benefits for loss covered by this policy will be paid as soon as we receive proper written proof of such loss.

LINA also points to the Proof of Loss form, which requires a claimant to prove how an accident occurred. LINA argues that because the Proof of Loss form requires a claimant to state how an accident occurred, LINA has the decision making power to decide whether a claim qualifies for payment. LINA believes that this decision making authority involves exercise of discretion. Thus, LINA contends that its policy grants LINA discretion and that this Court should review LINA's decision to deny benefits under an abuse of discretion, rather than <u>de novo</u>, standard.

The language of this plan is similar to the language of the plans in <u>Gallagher</u>, <u>Gowen</u>, and <u>Termini v. Life Ins. Co. of N. Am.</u>, 2007 WL 1556850 (E.D. Va. May 21, 2007). LINA, in fact, makes the same argument in this case as it did in <u>Termini</u>. <u>Termini</u>, 2007 WL 1556850 at *4. Each of these courts held that a <u>de novo</u> standard of review was appropriate. In making this determination, the critical question for this Court "is whether the policy language delegates to the administrator the final authority to determine what proof submitted in support of a claim is sufficient to award benefits." <u>Gower</u>, 501 F. Supp. 2d at 770 (citing <u>Gallagher</u>, 305 F.3d at 270 n.6). The intention to confer discretionary powers must be clear. <u>Id.</u> In this Circuit, "[f]inal authority to make

eligibility determinations is not delegated by 'the mere fact that a plan requires a determination of eligibility or entitlement by the administrator, or requires proof or satisfactory proof of the applicant's claim, or requires both a determination and proof (or satisfactory proof).'" <u>Gallagher</u>, 305 F.3d at 270 n.6 (quoting <u>Herzberger v. Standard Ins. Co.</u>, 205 F.3d 327, 332 (7th Cir. 2000)). The law is clear that LINA's requirement of determination of eligibility does not indicate a clear intention to delegate final authority to determine eligibility. <u>Id.</u> Accordingly, this Court will review LINA's denial of benefits to the plaintiff <u>de novo</u>.

2. <u>Policy Analysis</u>

LINA relied on two provisions of the plan in denying the plaintiff benefits:

> We agree to pay benefits for loss form bodily injuries: a. caused by an accident which happens while an insured is covered by this policy; and b. which, directly and from no other causes, results in a covered loss.
>
> . . .
>
> No benefits will be paid for loss resulting from: 1. Intentionally self-inflicted injuries, or any attempted threat.

LINA argues that it can deny benefits to the plaintiff because the decedent's death was not an accident.

It is well settled that this Court is to apply federal substantive law in evaluation an insurance policy regulated by ERISA. <u>Pilot Life Ins. v. Dedeaux</u>, 481 U.S. 41, 56-57 (1987).

18

While this Court looks to the plain language of the plan, the plan here does not define "accident."

This Court interprets undefined terms in insurance policies in an ordinary and popular sense and in a manner that a person of average intelligence and experience would interpret them. Gowen, 501 F. Supp. 2d at 771. This Circuit recognizes a distinction between intended consequences and highly likely consequences. See Eckelberry v. Reliastar Life Ins. Co., 469 F.3d 340, 346 (4th Cir. 2006) ("[W]hile an insured may not intend to die when he places a single cartridge into a pistol, spins the cylinder, places the gun to his forehead, and pulls the trigger, such a result is not just an unfortunate accident."). Accordingly, in the Fourth Circuit, "an act may be unintentional but not an accident." Gowen, 501 F. Supp. 2d at 772. The Gowen Court further found that the common meaning of "accident" is an "unexpected" event. Id.

To determine whether a death is an "unexpected" event, this Circuit adopted the First Circuit's subjective/objective analysis from Wickman v. Nw. Nt'l Ins. Co., 908 F.2d 1077, 1087-88 (1st Cir. 1990). Eckelberry, 469 F.3d at 343. Under that framework, this Court first asks whether the insured subjectively expected his actions to result in injury or death. Id. If the insured did not expect an injury, "the fact-finder must 'examine whether the suppositions which underlay that expectation were reasonable' and must do so 'from the perspective of the insured.'" Id. (quoting

<u>Wickman</u>, 908 F.2d at 1088).  If the evidence is insufficient to accurately determine the insured's subjective expectation, "the fact-finder should then engage in an objective analysis of the insured's expectations."  <u>Id.</u>  When conducting an objective analysis, this Court asks "whether a reasonable person, with background and characteristics similar to the insured, would have viewed the injury as highly likely to occur as a result of the insured's intentional conduct.  <u>Id.</u>

The facts in this case are not in dispute.  Karwacki died from injuries he sustained when he drove his motorcycle into the back of a street sweeper.  The police report showed that Karwacki's blood alcohol level was 0.16 percent, which is above the legal limit.  Additionally, Karwacki was driving between 80 and 100 mile per hour when he hit the street sweeper.

The plaintiff contends that there is direct evidence of the decedent's subjective intent in the record.  She points to the Hollywood Police Traffic Homicide Investigation report, which states that Karwacki was in good spirits and had bought fresh food just before the collision.  Further, the plaintiff points to Karwacki's friend's statement that Karwacki was happy and upbeat about a possible move to Chicago.

Assuming, without deciding, that buying food and being in a good mood is subjective intent that Karwacki did not expect an injury, this Court next moves to whether Karwacki's underlying

suppositions for that expectation were reasonable. Here there is no evidence in the administrative record from which the insured's underlying suppositions can be accurately determined. Thus, this Court proceeds to the objective analysis.

This Circuit has observed that "federal courts have found with near universal accord that alcohol-related injuries and deaths are not 'accidental' under insurance contracts governed by ERISA." Id. at 344. Applying an objective analysis, "the insured should have known that driving while intoxicated was highly likely to result in death or bodily harm as "the hazards of drinking and driving are widely known and widely publicized." Id. at 345. Additionally, "[a]ll drivers know, or should know, the dire consequences of drunk driving. Thus the fatal result that occurred in this case should surprise no reasonable person." Id. (quoting Nelson v. Sun Life Assurance Co., 962 F. Supp. 1010, 1012 (W.D. Mich. 1997)).

The Fourth Circuit did not establish a per se rule that every drunk driving crash can never be an accident. Id. at 347. If LINA had wanted drunk driving to always be excluded from the policy, it could have specifically stated that in its policy. Id. at 345. In this Circuit, "a plan fiduciary must assess all of the facts and circumstances attending a claim, afford the insured adequate opportunity to address the causes and circumstances surrounding any occurrence, and make a reasoned, principled assessment supported by substantial evidence." Id.

The administrative record includes the Police Investigation Report, which includes witness statements, the autopsy report, the toxicology report, and a media release; the Proof of Loss claim form; and the reports provided by a traffic accident reconstructionsist, a forensic pathologist, and a forensic toxicologist. In this case, Karwacki drove his motorcycle into the rear end of a street sweeper, driving between 80 and 100 miles per hour in a 40 mile per hour zone. Karwacki's blood alcohol level was determined to be 0.16 percent, which is above the legal limit. Fla. Stat. § 316.193. The decedent chose to drive under circumstances where his vision, motor control, and judgment were likely to be impaired. Id. As stated above, drunk driving is "widely known and widely publicized to be both illegal and highly dangerous." Id. at 347. "To characterize harm flowing from such behavior as merely accidental diminishes the personal responsibility that state laws and the rules of the road require." Id. at 346.

This Court acknowledges that it is possible for a drunk driving collision to be an "accident." However, after a de novo review, the totality of the evidence in the record in this case shows that a reasonable person in Karwacki's position would expect his actions to result in injury or death.

C.  <u>Defendants' Request for Attorneys' Fees and Costs</u>

In its reply memorandum to its motion for summary judgment, LINA requests attorney's fees and costs pursuant to 29 U.S.C. § 1132(g)(1).  After this Court's initial entry of summary judgment in favor of the defendants, the defendants withdrew their request for attorneys' fees and costs.  Because the Fourth Circuit vacated this Court's initial rulings on summary judgment, this Court will reconsider the defendants' request.

Pursuant to 29 U.S.C. § 1132(g)(1), the district court has discretion to "allow a reasonable attorney's fee and costs of action to either party."  Under the discretionary provision of ERISA, this Court employs a five-part test for determining the propriety of a fee award.  <u>Mid Atlantic Med. Servs., LLC v. Sereboff</u>, 407 F.3d 212, 221 (4th Cir. 2005).  The factors are as follows:

> 1.  The degree of the opposing party's culpability or bad faith;
>
> 2.  The ability of the opposing party to satisfy a fee award;
>
> 3.  Whether an award of fees against the opposing party would deter others from acting under similar circumstances;
>
> 4.  Whether the party requesting the fee award sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and
>
> 5.  The relative merits of the parties' contentions.

<u>Id.</u>

This Court finds that the plaintiff did not bring the present civil action in bad faith.  This Court does not have information as to the second factor.  The third and the fifth factor will be reviewed together.  The Fourth Circuit decided <u>Eckelberry</u> while the parties were briefing their summary judgment motions.  Therefore, this Court concludes that even though the plaintiff's contentions lacked merit, sanctions are inappropriate in this case.  Because this Court believes from the plaintiff's pleadings that the plaintiff made her arguments in good faith, there is no reason to deter others from acting under similar circumstances.  Finally, this action did not resolve a significant legal question regarding ERISA.  Therefore, four of the five factors weigh against awarding the defendants attorneys' fees and costs.  Accordingly, this Court denies the defendants' request for attorneys' fees and costs.

D.    <u>Defendant LINA's Motion for Leave to File Memorandum</u>

LINA filed a motion for leave to file a memorandum opposing the plaintiff's request to strike the declaration of Deborah Jameson of American Airlines.  In the plaintiff's reply to LINA/CIGNA Argument Regarding ERISA (Doc. 148), she states that the declaration of Jameson "reeks of unfair surprise" and asks this Court to ignore the declaration.  LINA requests to respond to this request of the plaintiff.  For good cause shown, this Court grants LINA's motion for leave to file a memorandum in opposition.

This Court finds that the plaintiff was on notice of the involvement of American Airlines as the Plan Sponsor and Administrator. LINA produced the Summary Plan Description from both 2000 and 2005 and informed the plaintiff that the documents were obtained from the Plan Administrator, American Airlines. Further, LINA's answers in discovery highlight American Airlines' role as the entity that had the information regarding the establishment and maintenance of the plan. Finally, the plaintiff filed a Rule 30(b)(6) deposition notice of American Airline's corporate designee. These documents show that the plaintiff was not unfairly surprised by the declaration of Jameson. Accordingly, this Court will not ignore the declaration of Jameson. The declaration specifically describes American Airlines' significant role and why the safe harbor exception does not apply to defendant LINA.

## V.    Conclusion

For the reasons stated above, defendants LINA and CIGNA's motion to dismiss the plaintiff's state law claims is GRANTED, defendant LINA's motion for summary judgment is GRANTED and defendant CIGNA's motion for summary judgment is GRANTED. The plaintiff's motion for summary judgment is DENIED. LINA and CIGNA's requests for attorneys' fees and costs are DENIED. LINA's motion for leave to file a memorandum in opposition is GRANTED. The Clerk is DIRECTED to file defendant LINA's memorandum opposing

the plaintiff's request to strike the declaration of Deborah Jameson (Doc. 150).

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein.  Pursuant to Federal Rule of Civil Procedure 58, the Clerk is DIRECTED to enter judgment on this matter.

DATED:    March 25, 2010


/s/ Frederick P. Stamp, Jr.
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE